IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| TOMMIE N. SMITH, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 6:15-CV-39 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Tommie N. Smith ("Smith") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Smith alleges that the Administrative Law Judge ("ALJ") erred by improperly considering Smith's impairments and pain complaints in the Residual Functional Capacity ("RFC") and improperly assessing his credibility. I conclude that the ALJ's opinion is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Smith's Motion for Summary Judgment (Dkt. No. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 16.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Smith failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted

1

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Smith protectively filed for DIB on December 30, 2011, claiming that his disability began on October 3, 2011. R. 165. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 56–63, 66–73. On December 12, 2013, ALJ R. Neely Owen held a video hearing to consider Smith's disability claim. R. 24–50. Smith was represented by an attorney at the hearing, which included testimony from Smith and vocational expert Arthur M. Brown. Id.

On March 28, 2014, the ALJ entered a decision analyzing Smith's claim under the familiar five-step process,[2] denying Smith's claim for disability. R. 11–19. The ALJ found that Smith suffered from the severe impairments of discogenic/degenerative back disorder and diabetes. R. 13. The ALJ further found that Smith retained the RFC to perform light work except

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

he can only occasionally climb ladders/ropes/scaffolds, stoop and crawl; frequently climb stairs/ramps, kneel and crouch, and can perform unlimited balancing. R. 14. The ALJ determined that Smith was capable of performing past relevant work as a school bus monitor and retail store manager. R. 18. Thus, the ALJ concluded that Smith was not disabled. Id. Smith appealed the ALJ's decision and the Appeals Council denied his request for review on September 1, 2015 (R. 1–5), and this appeal followed.

## ANALYSIS

Smith alleges that the ALJ erred by: (1) failing to properly consider Smith's impairments and pain complaints in the RFC and (2) rendering a decision on credibility[3] not otherwise supported by substantial evidence. Smith disputes the ALJ's evaluation of his subjective complaints in both claims, so I will address both of these claims together.

Smith argues that the ALJ erred by finding he can perform work at the light exertional level, with some limitations, when the medical evidence of record "actually establishes" that Smith's RFC is "less than sedentary" and "corroborat[es] plaintiff's reported symptoms and functional limitations." Pl. Br. Summ. J., 11–12.

---

[3] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16–3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16–3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16–3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16–3p was issued long after the ALJ's consideration of Smith's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96–7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

However, I note that the methodology required by both SSR 16–3p and SSR 96–7p are quite similar. Under either, the ALJ is required to consider Smith's report of his own symptoms against the backdrop of the entire case record; in SSR 96–7p, this resulted in a "credibility" analysis, in SSR 16–3p, this allows the adjudicator to evaluate "consistency."

3

Prior to applying for disability benefits, Smith visited Dr. Murray Joiner, M.D., in October 2011, reporting he had a "ton of injuries" to his lower back. R. 242–245. He returned to Dr. Joiner a month later, at which time he was prescribed medication. R. 246–247. Dr. Joiner's examinations revealed no acute distress and that Smith had a "dramatic hyperactive pain response." R. 244, 247. Dr. Joiner also noted Smith displayed "inconsistent SI joint tenderness" or "no specific SI joint tenderness", straight leg raise testing was negative, and Smith had full strength and intact sensation. R. 244, 247.

Examinations by Smith's primary care physician, Dr. George Wagner, M.D., from May 2012 to December 2012 revealed normal results, no motor or sensory deficits in his legs, but a limited range of motion in his back. R. 265–266, 263–264, 265, 277–278. Smith began physical therapy for his back on September 10, 2012. R. 346. The therapist noted at the initial visit that Smith had an "exaggerated pain response with light palpation and casual movements." Id.

In January and March 2013, Smith saw Dr. John Fraser, M.D., for a surgical consultation. R. 330–332. Upon physical examination, Dr. Fraser noted Smith "pants and grunts a lot but with encouragement is able to walk on his heels and toes and do knee bends well on either leg and touch the floor kneeling from a chair." R. 332. Dr. Fraser also found Smith performed these maneuvers "without evidence of asymmetry of strength" and Smith had "no focal motor or sensory deficits." R. 331–332. X-rays also showed no instability and EMG studies were normal. R. 332, 234, 253–254. On March 12, 2013, a lumbar CT revealed Smith had spur/disc complexes at L4-5 and L5-S1 with associated foraminal stenosis and a left paracentral disc protrusion at L5-S1 with significant left recess stenosis and displacement of transiting left S1 nerve roots. R. 294–295. Dr. Fraser explained that although the results of this CT scan showed herniation, which could contribute to Smith's leg pain, Smith did not require surgery for his back

4

pain because testing showed that his pain was "due to degenerative disk disease without instability or deformity" and with no significant stenosis. R. 332; see also 234, 247, 250–252, 287–289, 293–294. Dr. Fraser also gave him lumbar exercises to do. R. 332. On June 4, 2013, Smith was seen by Jason Meador, PA, who noted Smith complained of low back pain and found during the physical exam a moderate spasm and vertebral spine tenderness in the lumbar region of Smith's back. R. 297. In December 2013, Mr. Meador indicated that Smith's leg pain was likely related to the findings in the March 2013 lumbar CT scan. R. 361.

Smith's subjective allegations of pain and limitations are not conclusive. Rather, under the two-step credibility analysis, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Smith met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ must then evaluate the intensity and persistence of the claimed symptoms and their effect upon Smith's ability to work. Id. at 594–95.

In Smith's case, the ALJ followed the required two step process, and determined first that there is no underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce Smith's symptoms, such as pain. R. 17; see SSR 96-7p, at *1. The ALJ set forth Smith's subjective complaints about the intensity, persistence and limiting effects of his symptoms in detail in the opinion. R. 15–17. In step two, the ALJ concluded that Smith's statements concerning the intensity, persistence and limiting effects of his symptoms are "not entirely credible." R. 17. In the analysis, the ALJ determined that Smith's statements about his symptoms and limitations are not consistent with the objective medical evidence and other evidence in the record. R. 17. Specifically, the ALJ set forth Smith's medical treatment history

5

in detail and noted that "his treatment record does not support his allegations regarding the severity of his limitations" when finding Smith capable of light work, with limited exceptions. R. 17. The ALJ stated:

> Moreover, the claimant has acted inconsistently for one who is asserting he is completely disabled, and he has made inconsistent statements or statements contradicted by other evidence of record, which significantly undermine his credibility. In October 2011, Dr. Joiner reported that the claimant exhibited dramatic hyperactive pain behaviors and inconsistent S1 joint tenderness. He also noted that he did not find objective evidence of an impairment for which he would prescribe narcotic medications. During a physical therapy evaluation on September 10, 2012, it was again noted that he had exaggerated pain response to light palpation and casual movements. Dr. Fraser reported that the claimant panted and grunted a lot but with encouragement, he was able to walk on his heels and toes and do knee [b]ends. Further, the claimant's testimony that he can only sit for 5 to 10 minutes and walk for 5 minutes also appears grossly exaggerated and unsupported by the record. In his function report, he indicated that he prepared light meals, drove a car, rode in a car, went to the grocery store twice a week, watched television, played video games and cared for his personal needs (Ex. 6E). He testified that his back pain is constant, however he advised PA Meador on September 14, 2013, that it 'comes and goes' noting that some days it is intense and other days manageable.

R. 17–18. The ALJ also noted that Smith is in reasonably good health; the "claimant has limited findings on MRI but physical examinations showed no motor or sensory deficit and EMG studies were normal." R. 17. The ALJ additionally noted that while Smith used crutches, Smith acknowledged that they had not been prescribed to him, and Smith had been advised that surgery would not be helpful. R. 17. The ALJ also referred to Smith's brief attendance in physical therapy and Smith's testimony that he "has not continued to do the home exercise program that was recommended both by Dr. Fraser and his physical therapist." R. 17.

Smith's argument is merely an invitation to re-weigh the evidence and conclude that Smith suffers from impairments which more severely limit his functional capacity than the RFC found by the ALJ. Smith's argument misses the review function of this court – whether substantial evidence supports the ALJ's determination. Here, the ALJ carefully and

6

comprehensively analyzed the medical evidence – including evidence which conflicts with the ALJ's conclusions. Smith does not, and cannot, point to any improper legal standard the ALJ relied upon or demonstrate that the ALJ failed in his duty of explaining the opinion reached. It is the ALJ's province to weigh the evidence, determine how to handle conflicting evidence, and reach a conclusion of whether Smith is disabled. The ALJ in this case fulfilled his duties and substantial evidence supports the RFC determination and the conclusions as to Smith's credibility. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

## CONCLUSION

For the reasons set forth above, I recommend that Smith's motion for summary judgment be **DENIED**, and the Commissioner's motion for summary judgment be **GRANTED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: January 31, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

7

Case 6:15-cv-00039-NKM-RSB   Document 20   Filed 01/31/17   Page 7 of 7   Pageid#: 439